RECEIVED
JUL 1 3 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK)<br>60 Massachusetts Avenue, NE<br>Washington, DC 20020<br><br>　　PLAINTIFF,<br><br>v.<br><br>3.44 ACRES MORE OR LESS OF LAND AND BUILDING located at 900 2nd Street, NE<br>Washington, DC 20002-3557<br><br>and<br><br>FLUORINE LLC<br>1627 K Street, NW<br>Lower Level<br>Washington, DC 20006<br><br>　　SERVE ON:<br>　　Corporation Service Company<br>　　1090 Vermont Avenue, NW<br>　　Washington, DC 20005<br>　　**Registered Agent**<br><br>and<br><br>MICHAEL V. ANTONELLI AND SADHVI SUBRAMANIAN, TRUSTEES<br>C/O CAPITAL ONE, N.A.<br>1680 Capital One Drive<br>McLean, VA 22102<br><br>and<br><br>UNKNOWN TENANTS<br><br>and<br><br>UNKNOWN OTHERS<br><br>　　DEFENDANTS. | Case: 1:15-cv-01088<br>Assigned To : Jackson, Ketanji Brown<br>Assign. Date : 7/13/2015<br>Description: General Civil  (E Deck) |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR CONDEMNATION

NOW COMES Plaintiff, National Railroad Passenger Corporation, also known as Amtrak ("Amtrak"), pursuant to authority provided by 49 U.S.C. § 24311 and in compliance with Federal Rule of Civil Procedure 71.1, and files this Complaint for Condemnation of two land parcels, any and all improvements thereon ("Land Parcels"), and any and all leasehold rights and interests relating to the Land Parcels and improvements held by Fluorine located at 900 2nd Street, NE, Washington, DC 20002, described in instruments recorded among the District of Columbia Property Location Block Plats as Lot 812 and Lot 814 in Square 717 (hereinafter referred to collectively as the "Subject Property"), against the Defendants listed above, record owners and interested parties, and respectfully sets forth the following:

I.  PARTIES, JURISDICTION AND VENUE

1. Amtrak is authorized under federal law, specifically 49 U.S.C. § 24311, to acquire through eminent domain interests in property necessary for intercity rail passenger transportation.

2. The United States District Court for the District of Columbia has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because the authority for Amtrak to acquire an interest in property by eminent domain arises under the laws of the United States.

3. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1349 because a majority of Amtrak's stock is owned by the United States.

4. Amtrak is a corporation authorized to be created by the Rail Passenger Service Act, currently set forth at 49 U.S.C. § 24101 et seq. Amtrak's principal place of business is

located at 60 Massachusetts Avenue, NE, Washington, DC 20002.

5. Upon information and belief, Fluorine LLC (referred to herein as "Fluorine" or as the "Condemnee") is a limited liability company organized under the laws of Washington, D.C. with its principal place of business at 1627 K Street, NW, Lower Level, Washington, DC 20006.

6. Plaintiff is informed and believes that Fluorine is the owner in fee simple of the two land parcels and improvements thereon described among the land records of the District of Columbia as Lots 812 and 814 in Square 717, located at 900 2nd Street, NE, Washington, DC, 20002, for which legal descriptions are also set forth in a Special Warranty Deed between REA Associates, LLC and Fluorine (the "2012 Deed"), recorded among the land records of the District of Columbia as Instrument No. 2012078018, a true and accurate copy of which is attached as **EXHIBIT A**, and which are also described in a Purchase Money Deed of Trust from Fluorine LLC to Michael V. Antonelli and Sadhvi Subramanian, Trustees, dated July 19, 2012, recorded among the land records of the District of Columbia as Instrument No. 2012078019, as amended by Amendment to Deed of Trust, recorded as Instrument No. 2015009169, securing Capital One, National Association, a true and accurate copy of which is attached as **EXHIBIT B**. Hereinafter the condemned parcels, including the improvements thereupon, shall be referred to as the "Land Parcels", incorporating the legal descriptions identified and recorded among the land records for the District of Columbia as set forth above.

7. Venue in the United States District Court for the District of Columbia is proper pursuant to 49 U.S.C. § 24311(b), which requires that actions brought by Amtrak to acquire interests in real property must be brought in the United States District Court for the judicial district in which the property to be acquired is located. The Subject Property is located in the

judicial district for the District of Columbia.

8. In addition to the Condemnee named in this Complaint as Defendant, namely Fluorine LLC, and the Secured Party, Capital One, N.A., also named as Defendant, upon information and belief there are tenants/leasees who may have an interest in the Subject Property, but whose identities and legal interests are currently unknown. Additionally, there may be others who have, or may claim, some interest in the Subject Property and whose names are unknown and not reasonably ascertainable by Amtrak at this time. Such persons or entities are made prospective parties to this action under the designation of "Unknown Tenants" and "Unknown Others" as permitted by Federal Rule of Civil Procedure 71.1(c)(3).

9. Amtrak hereby exercises its power of eminent domain pursuant to 49 U.S.C. § 24311(a)(2) having been unable to acquire the interest in the Subject Property either by contract or by agreement with Fluorine for a purchase upon an agreed upon price.

10. Amtrak has complied with all of the requirements of 49 U.S.C. § 24311 et seq., entitling it to exercise the right of condemnation to obtain the Subject Property.

## II. THE SUBJECT PROPERTY IS NECESSARY FOR INTERCITY RAIL PASSENGER TRANSPORTATION

11. Fee interests in the Land Parcels are necessary for intercity rail passenger transportation within the Northeast Corridor ("NEC") which already are being used for this purpose through Amtrak's utilization of forty (40) easements appurtenant to the Land Parcels, operation of an electrical traction substation located on Parcel 814, and occupation of approximately one-third (1/3) of the leasable space of the Building located on Parcel 812 as a leasee.

12. The Subject Property is also immediately adjacent to Amtrak's Washington Union

Terminal property ("WUT") which was designated for Amtrak's use pursuant to the Regional Rail Reorganization Act of 1973, 45 U.S.C. § 701 et seq.

13.   Amtrak's WUT is the southernmost point of the NEC, designated by Congress as a "valuable resource of the United States." 49 U.S.C. § 24101(a)(7)(vii).

14.   Amtrak owns and serves as the infrastructure manager for the majority of the NEC, providing dispatching services and electric propulsion power and maintaining and improving the infrastructure and facilities that are used not only by Amtrak, but also by the commuter and freight rail services.

15.   Amtrak's Northeast Corridor is an essential artery serving major cities in the Northeast region, connecting Washington, DC to Boston, Massachusetts and with connecting corridors to Harrisburg, Pennsylvania, Springfield, Massachusetts, Albany, New York and Richmond, Virginia. Amtrak runs 157 trains on the Northeast Corridor every day. In 2013, Amtrak's NEC carried 11.4 million passengers and Amtrak's Washington-Richmond-Newport News corridor trains carried an additional 6 million passengers.

16.   Amtrak's NEC is the busiest passenger rail line in the United States as measured by its ridership and service frequency. The Northeast's five major metropolitan regions – Boston, New York, Philadelphia, Baltimore and Washington, DC – rely on Amtrak services for a significant and growing share of business and leisure travel and on NEC infrastructure for the daily commuting needs of their workforces.

17.   Amtrak is planning an expansion and reconfiguration of its facilities at Washington Union Station, the WUT, and the surrounding area in order to provide expanded Passenger Service (the "Proposed Expansion") to meet future growth as part of the

implementation of a WUT Master Plan. The Proposed Expansion will achieve a number of strategic objectives including increased track capacity, widened platforms, fire and life safety requirements, and control of vital easements throughout the Subject Property.

18. Acquisition of the Subject Property, including associated easements, and any and all leasehold rights and interests relating to the Land Parcels and improvements held by Fluorine, is necessary to effectuate the Proposed Expansion by providing: control over the forty (40) electrical and communication easements that currently encumber the Subject Property, emergency access and maintenance access to Amtrak's adjacent tracks and other railroad facilities, space for additional railroad personnel and activities relating to growing rail passenger ridership, construction, construction staging, utility placement and flexibility, the placement of electrical substations, movement of the existing substation, resources, and other reconstruction, repair, rehabilitation and repurposing efforts.

### III. DESCRIPTION OF THE SUBJECT PROPERTY

19. The Land Parcels are described in the Deed recorded among the District of Columbia Property Location Block Plats as Instrument No. 2012078018 and attached to this Complaint as **EXHIBIT A**. The Deed provides the following legal description of the Land Parcels:

> All of that certain property located in the City of Washington, District of Columbia, described in two parts as follows:
>
> **Parcel I:**
>
> Property formerly known as:
>
> Original Lots 1, 8, 9 and 10 and parts of Original Lots 2 and 7 in Square 718 as per plat recorded in the Office of the Surveyor for the District of Columbia in Book 1 at Plat 718.

AND

Part of Lots 3, 4, 5, 6, and 7 in Square 716 as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 3 at folio 207.

AND

Parts of Lots 32 and 33 in Square 716 as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 10 at folio 132.

The above described land also being formerly part of assessments and taxation Lot 810 in Square 717 including portions of "H" and "I" Streets, N.E. and being more particularly described as follows in the meridian of the Office of the Surveyor of the District of Columbia;

BEGINNING at the intersection of the westerly right of way line of 2nd Street, N.E. and the northerly right of way line of "H" Sheet, N.E. as originally dedicated; thence running with the northerly right of way line of "H" Street, N.E. West 31.53 feet to a point; thence crossing said "H" Street, N.E. South 15 degrees 44'00" West, 88.31 feet to a point on the southerly right of way line of "H" Street. N.E. as now existing; thence with said southerly right of way line West 78.90 feet to a point; thence 236.74 feet along a curve to the left, said curve having a radius of 1443.34 feet and a chord bearing and distance of North 04 degrees 39'14" East, 236.47 feet to a point; thence North 00 degrees 02'42" West, 330.15 feet to a point; thence running for a new line of division South 89 degrees 54'17" East, 115.44 feet to a point on the said westerly right of way line of said 2nd Street, N.E.; thence running with said 2nd Street, N.E. South 480.67 feet to the point of beginning, containing 63005.66 square feet or 1.4464 acres of land.

The portion of the above property containing the right of way for "H" Street is described as follows:

BEGINNING for the same at a point on the second course described above, said point being 5.20 feet from the beginning of said second course, and running thence (1) South 15 degrees 44'00" West. 83.11 feet to the southerly line of H Street, N.E., as now existing; thence with said southerly line of H Street N.E. (2) Due West 78.90 feet to a point; thence crossing said H Street, N.E. (3) 80.75 feet along the arc of a curve to the left having a radius of

7

1443.34 feet and a chord bearing North 07 degrees 45'00" East, 80.74 feet to a point on the northerly line of H Street, N.E.; thence with said northerly line of H Street, N.E. as now existing (4) Due East 90.55 feet to the point of BEGINNING and containing 6,747.22 square feet of 0.15489 of an acre of land, more or less.

*The above described property being now known for assessment and taxation purposes as **Lot numbered 812 in Square 717.***

TOGETHER WITH the rights of Grantor and its successors and assigns under Agreement Governing Use of Public Space Below H Street Overpass for Access Purposes, recorded April 7, 1989 as Instrument No. 8900019489; and,

TOGETHER WITH Easement for Electric Power and Other Facilities, recorded February 25, 1987, as Instrument No. 8700008659.

TOGETHER WITH Parking Easement as set forth in Declaration of Easements, Covenants and Related Agreements recorded December 14, 1998, as Instrument No. 9800096039.

**Parcel II:**

Lots 1 to 14, inclusive in Square 714 as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 8 at folio 282.

AND

Lots 18 and 19 in Square 714 as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 23 at folio 186.

AND

Lots 21 to 31, inclusive and parts of Lots 3, 4, 5, 6, 7, 13, 14, 15, 16, 17, 18 and 20 in Square 716 as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 3 at folio 207.

AND

Part of Lots 32 and 33 in Square 716 as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 10 at folio 132.

The above described land also being formerly part of Assessment and Taxation Lot 810 in Square 717 including Portions of "K" Street, N.E. and being more particularly described as follows in the

meridian of the Office of the Surveyor for the District of Columbia:

BEGINNING at the intersection of the westerly right of way line of 2nd Street, N.E. and the southerly right of way line of "L" Street, N.E. as now existing; thence running with said 2nd Street, N.E. South 719.00 feet to a point; thence running with a new line of division North 89 degrees 54'17" West, 115.44 feet to a point; thence North 00 degrees 02'42" West, 356.16 feet to a point; thence 248.19 feet along a curve to the right, said curve having a radius of 901.26 feet and a chord bearing and distance of North 07 degrees 50'39" East, 247.41 feet to a point; thence North 15 degrees 44'00" East, 122.15 feet to a point on the southerly right of way line of "L" Street, N.E. as now existing; thence with said "L" Street, N.E. East 48.83 feet to the point of beginning, containing 74495.42 square feet or 1.7102 acres of land.

The portion of the above property containing the right of way for "K" Street is described as follows:

BEGINNING for the same at the end of the third course described above and running thence with the northerly line of K Street, N.E. as now existing (1) Due East 115.72 feet to the intersection of the northerly line of K Street, N.E. as now existing with the westerly line of 2nd Street, N.E.; thence crossing K Street, N.E. (2) Due South 80.00 feet to a point on the southerly line of K Street, N.E. as now existing; thence with said southerly line of K Street, N.E. (3) Due West 115.66 feet to a point; thence crossing K Street, N.E. (4) North 00 degrees 02'42" West, 80.00 feet to the point of beginning, and containing 9,254.90 square feet or 0.21246 of an acre of land, more or less.

LESS AND EXCEPT THE FOLLOWING:

DESCRIPTION OF AIR RIGHTS PARCEL KNOWN AS A & T LOT 7000 WASHINGTON, D.C.

The north six hundred nineteen feet thereof by the full east-west dimension thereof, and having a lower limit at elevation 61.00 feet above United States Coast and Geodetic Survey mean sea level, 1929 General Adjustment.

*The above described property being now known for assessment and taxation purposes as **Lot numbered 814 in Square 717**.*

EXHIBIT A (emphasis in original).

20. The acquisition by condemnation of the Land Parcels and improvements shall be in fee simple and shall include any and all rights that run with the Land Parcels, but shall remain subject to any easement and/or easement rights held by Amtrak and/or Washington Terminal Company, pursuant to the following recorded Instruments:

    a. Easements described in Deed recorded December 22, 1981 as Instrument No. 8100039354 (between Washington Terminal Company, as Grantor, and Mount Clare Properties, as Grantee) as terminated, with respect to the "Floating Easement" described in paragraph (i) on page 10 of that Instrument and amended by an Easement for Electric Power and Other Facilities dated December 14, 1984 (between Mount Clare Properties, Inc., as Grantor, and Washington Terminal Company, as Grantee) and recorded December 17, 1984 and re-recorded April 5, 1985 as Instrument No. 8500012375, and as modified by a Modification of Easements recorded January 19, 1995 as Instrument No. 9500005130 (between REA Associates Limited Partnership, as Grantor, and WTC, as Grantee).

21. The acquisition by condemnation shall include any easement and/or rights held by Fluorine, that run with the Land Parcels, including but not limited to the following recorded Instruments:

    a. Easement Agreement by and between REA Associates Limited Partnership, a District of Columbia limited partnership, and CASCO Second Street, LLC, dated December 14, 1998 and recorded on December 14, 1998 as Instrument No. 9800096037, re-recorded June 4, 1999 as Instrument No. 9900051071;

  b. Rights held by Fluorine pursuant to an Agreement to Cooperate between REA Associates Limited Partnership and CASCO Second Street, LLC recorded on December 14, 1998 as Instrument No. 9800096038; and

  c. Rights held by Fluorine and its successors and assigns under an Agreement Governing Use of Public Space Below H Street Overpass for Access Purposes, recorded April 7, 1989 as Instrument No.8900019489, the Easement for Electric Power and Other Facilities, recorded February 25, 1987, as Instrument No. 8700008659, and a Parking Easement as set forth in Declaration of Easements, Covenants and Related Agreements recorded December 14, 1998, as Instrument No. 9800096039 and re-recorded as Instrument No. 9900051072.

22. Any and all secured interests and rights in the Subject Property are terminated and extinguished by operation of law through this eminent domain proceeding.

23. Amtrak also brings this action to acquire any and all leasehold rights and interests relating to the Land Parcels and improvements held by Fluorine, but not leasehold interests relating to the Land Parcels and improvements held by as yet unknown tenants and/or others.

### IV. STATEMENT OF INTEREST IN PROPERTY TAKEN

24. Amtrak is filing a Declaration of Taking contemporaneously herewith and is depositing the money estimated as just compensation as described in Paragraph 25 hereof. Amtrak is therefore immediately vested with title to the Subject Property in fee simple absolute pursuant to 49 U.S.C. § 24311(b)(2).

V.     STATEMENT OF MONEY ESTIMATED FOR JUST COMPENSATION

25.    At or about the time of the filing of this action, Amtrak is depositing into the Court the amount which it estimates to be just compensation for the interests taken pursuant to 49 U.S.C. §§ 24311(b)(1)-(b)(2), namely Thirty-Five Million Dollars and No Cents ($35,000,000.00) (the "Deposit"), which is a prerequisite to the filing of a Declaration of Taking and the vesting of title of the Subject Property in Amtrak.

26.    Amtrak has obtained from a certified real estate appraiser a valuation of the estimated just compensation for the Subject Property.

27.    The certified real estate appraiser ascertained that the fair market value of the Subject Property is Thirty-Five Million Dollars and No Cents ($35,000,000.00).

28.    Prior to the date of the filing of this Complaint, Amtrak attempted in good faith to negotiate a purchase price for the Subject Property with Fluorine pursuant to 49 U.S.C. § 24311(a)(2).

29.    Amtrak offered to purchase the Subject Property for a sum of Thirty-Five Million Dollars and No Cents ($35,000,000.00) (the "Offer"), which is the amount that Amtrak is depositing into this Court.

30.    Fluorine rejected Amtrak's offer to acquire the Subject Property.

31.    Negotiations for a purchase of the Subject Property by consent were unsuccessful.

32.    Pursuant to 49 U.S.C. § 24311(b)(3), this Court shall make a finding on the amount that is just compensation for the interest taken in the Subject Property. Alternatively, Amtrak requests that the determination of the value of just compensation be referred to a duly appointed commission pursuant to Federal Rule of Civil Procedure 71.1(h)(2).

## VI.  POSSESSION OF THE SUBJECT PROPERTY

33. Pursuant to 49 U.S.C. § 24311(b)(2), this Court may decide "the time by which, and the terms under which, possession of the property is given to Amtrak." Amtrak seeks immediate access to the Subject Property in order to conduct a thorough inspection.

34. Immediate access to the Subject Property by Amtrak is necessary because: (1) no just reason for delay in allowing Amtrak to inspect the Subject Property exists; (2) Amtrak's immediate access to the Subject Property will not cause any inconvenience or expense to the Condemnee; and (3) delay in allowing Amtrak access to the Subject Property will obstruct Amtrak's ability to plan for an orderly transfer of possession and use for intercity rail passenger transportation.

35. Amtrak does not seek to deprive, alter, or amend Fluorine's rights or obligations as to the Subject Property prior to possession of the Subject Property by Amtrak, including, but not limited to, Fluorine's responsibility for paying all utility and other bills, collecting rents, and in all respects continuing to maintain and manage the Subject Property until the Court transfers possession to Amtrak and Amtrak takes possession of the Subject Property.

## VII.  OUTSTANDING CHARGES

36. Pursuant to 49 U.S.C. § 24311(b)(2), upon the filing of the Declaration of Taking, the Court is empowered to decide the disposition of outstanding charges related to the Subject Property.

37. In particular, Amtrak seeks from Fluorine the value of its tenancy and possession of the Subject Property during the time period running from the date of the filing of the Declaration of Taking, which vests title to the Subject Property in Amtrak, to the date of

possession by Amtrak.

38.     Amtrak seeks the disposition of all such outstanding charges, if any, and requests that such charges be disposed of by imposing them on the Condemnee.

WHEREFORE, Plaintiff, National Railroad Passenger Corporation, also known as Amtrak, respectfully prays for judgment that the Subject Property be and is condemned; that Amtrak be granted a fee simple interest in the two Land Parcels, any and all improvements thereon, and any and all leasehold rights and interests relating to the Land Parcels and improvements held by Fluorine located at 900 2nd Street, NE, Washington, DC 20002, described in instruments recorded among the District of Columbia Property Location Block Plats as Lot 812 and Lot 814 in Square 717 (i.e. the Subject Property); and that the Court grant such other relief as may be just, including but not limited to an order fixing the value of the interest in the Property condemned, the time and terms for Amtrak's possession of the Subject Property, and an order disposing of any outstanding charges thereon.

Respectfully submitted,

COUNSEL FOR PLAINTIFF NATIONAL RAILROAD
PASSENGER CORPORATION

*/s/ Dennis M. Moore*

Dennis M. Moore
Federal Bar ID: 303396
Deputy General Counsel and Solicitor General
NATIONAL RAILROAD PASSENGER CORPORATION
60 Massachusetts Ave. NE
Washington, DC  20002
Telephone: 202-906-2750
Fax: 202-906-2821
udma@amtrak.com

*signature*

Drake Zaharris Federal Bar ID: 385906
Talley H-S. Kovacs Federal Bar ID: 17929
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland 21204
Telephone: 410-938-8800
Fax: 410-832-5650
dzaharris@pklaw.com
tkovacs@pklaw.com

15